FILED ____ LODGED
RECEIVED ____ COPY

JUL 2 8 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

1    **UNITED STATES DISTRICT COURT**
2    **FOR THE DISTRICT OF ARIZONA**

3    Rune Kraft,
          Plaintiff,

     Case No.:

     **CV20-01491-PHX-DLR**

4    vs.

     COMPLAINT

5    Maricopa County, Jonathan S. Levine, Benjamin
     Urquhart, Joseph G. Urquhart, Daniel Tovar,
6    Andrew Lawrence Phares, Paris Weant, 110
     Holdings, Llc, Domestic Llc, 220 Holdings, Llc,
7    Domestic Llc, 330 Holdings, Llc, Domestic Llc,
     Ariz Investments, Llc, Domestic Llc, Az Is Homes,
8    Llc, Domestic Llc, Az Property Managers, Llc,
     Domestic Llc, Brandini Holdings, Llc, Domestic
9    Llc, Brandory Investments, Llc, Domestic Llc, Bron
     Investments, Llc, Domestic Llc, Burk West, Llc,
10   Domestic Llc, Burkshire Investment Group, Llc,
     Domestic Llc, Canyon State Property Managers,
11   Llc, Domestic Llc, Carolyn J Kildew-Arizona Trust,
     Carson Construction Trust, Casa Calasa, Llc,
12   Domestic Llc, Cbj Ventures, Llc, Domestic Llc,
     Central Holdings, Llc, Domestic Llc, Ckaz
13   Investments, Llc, Domestic Llc, Columbus Capital
     Llc, Domestic Llc, Donald Duck Development, Llc,
14   Domestic Llc, Double J Properties, Llc, Domestic
     Llc, Empire J Investments, Llc, Domestic Llc, Ga
15   Properties, Llc, Domestic Llc, Georgia Appreciation
     Potential, Llc, Domestic Llc, Jeffrey Irvin Holdings,
16   Llc, Domestic Llc, Jsl Trust, Jsl Trust Dated Nov
     26th 2008, Jsljml, Llc, Domestic Llc, Jonira, Llc,
17   Domestic Llc, King J Holdings, Llc, Domestic Llc,
     Levine Ira, Maricopoly, Llc, Domestic Llc, Mr.
18   Jacob Investments, Llc, Domestic Llc, Nm
     Properties, Llc, Domestic Llc, Perfect Prestamos,
19   Llc, Domestic Llc, Procasa Limited Liability
     Company, Domestic Llc, Propiedades Perfectos,
20   Llc, Domestic Llc, Queen E Land, Llc, Domestic
     Llc, Queen Kl Investments, Llc, Domestic Llc,
21   Royal View Properties, Llc, Domestic Llc, Sky
     Harbor Holdings, Llc, Domestic Llc, South Central
22   Holdings, Llc, Domestic Llc, Ted Frank
     Investments, Llc, Domestic Llc, The Jsl Trust, The
23   Maryory Castrillon Az Trust Dtd 5/16/16,
     Ticketmanus, Llc, Domestic Llc, Vantage Fbo The
24   Jonathan S, M. Reese, and DOES 1-10, Inclusive,
          Defendants.

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE   7.1 (a)(1)   LRCivP 5.4
          (Rule Number/Section)

COMPLAINT

# TABLE OF CONTENTS

Page

1. Jurisdiction and Venue ... 1

2. Parties ... 1

3. Compliance with Rule 8 ... 3

4. The Fraudulent Scheme that Has Injured, <u>and Continues to Injure</u>, Plaintiff in His Business and Property. ... 4

   4.1 Declaration of Plaintiff ... 4

   4.2 Arizona's Statute of Frauds. A.R.S. § 44-101 ... 12

   4.3 The Courts of Maricopa County Have Been Used Without Jurisdiction, Which Means That Their Orders Are Not Voidable, But Void. ... 12

      4.3.1 The Justice Court Lacked Jurisdiction. A.R.S. §§ 22-201 A, 22-201 B, 22-201 C, 22-201 D, 22-201 G ... 12

      4.3.2 The Superior Court Lacked Jurisdiction. Justice Court Rules of Civil Procedure Rule 144 f. ... 14

   4.4 For the Purpose of Obtaining Money and Property the Scheme to Defraud Was Advanced, Concealed and Furthered by Using the Mail and the Wire to Corrupt the Public Records of Maricopa County, Which Constitutes A Pattern of Racketeering Activity. 18 U.S.C. §§ 1961(1), 1961(5) ... 15

      4.4.1 Arizona's Criminal Statutes for Fraudulent Public Recordings. A.R.S. §§ 13-2002, 13-2407, 39-161 ... 15

      4.4.2 Mail Fraud and Wire Fraud Related to Recording No. 2018-0792379 ... 15

      4.4.3 Mail Fraud and Wire Fraud Related to Recording No. 19-0256291 ... 17

      4.4.4 Mail Fraud and Wire Fraud Related to Recording No. 20200506265 ... 18

   4.5 The Proceeds from the Fraud and Fraudulent Scheme Were Used to Operate the Associated-In-Fact Enterprise, Which Constitutes a Conspiracy to Commit Money Laundering ... 19

   4.6 The Defendants Are An "Enterprise". 18 U.S.C. § 1961(4) ... 20

5. The Injuries to Plaintiff's Business and Property by a Reason of a Violation of 18 U.S.C. § 1962 ......................................................... 23

   5.1 Financial Loss Based on Contractual Rights ............................... 23

   5.2 Financial Loss Based on Proprietary Interest in Real Property ..... 24

   5.3 Financial Loss Based on Proprietary Interest in Information Technology Property ................................................................. 25

   5.4 Money Loss Based on Proprietary Rights ................................. 26

   5.5 Loss of Property or Impairment to Property .............................. 27

6. The United States of America's Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1962, Has Been Violated by the RICO Enterprise Defendants. ............................................................. 27

   6.1 Conspiracy to Commit Mail Fraud and Wire Fraud. Violation of 18 U.S.C. § 1962(d) ........................................................... 27

   6.2 Mail Fraud. 18 U.S.C. § 1961(1)(B). Predicate Acts (18 U.S.C. § 1341). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d) .................. 31

   6.3 Wire Fraud. 18 U.S.C. § 1961(1)(B). Predicate Acts (18 U.S.C. § 1343). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d) .................. 33

   6.4 Conspiracy to Commit Money Laundering. 18 U.S.C. § 1961(1)(B). Predicate Acts (18 U.S.C. § 1956(h)). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). ........................................ 35

7. The United States of America's Civil Rights Statute for Property Rights, 42 U.S.C. § 1982, Has Been Violated by the Government Defendant. ..... 37

   7.1 Employees of Maricopa County Engaged in Fraud. ..................... 37

   7.2 Plaintiff Was Deprived of Constitutional Rights and Federal Statutory Rights. ........ 38

8. Plaintiff Has Constitutional Standing. Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife* ................................................... 39

9. Plaintiff Has Statutory Standing. 18 U.S.C. § 1964(c) and 28 U.S.C. § 1343 (a). ...... 40

10. The Complaint Satisfies the Standards Set by the Supreme Court of the United States for Complaints in the Federal Court System. *Twiqbal* ...... 43

iii

# 1. Jurisdiction and venue

1. This court has subject matter jurisdiction pursuant to Article III, section 2, clause 1, of the U.S. Constitution which extends the federal judicial power to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."

2. This is an action for civil relief under 18 U.S.C. §§ 1961 et seq., which gives this court authority pursuant to 18 U.S.C § 1964 (a), and deprivation of rights under 42 U.S.C. §§ 1981 et seq., which gives this court authority pursuant to 28 U.S.C. § 1343 (a), and the district court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (2) as this is where the government defendant resides, the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and the property that is the subject of the action is situated.

# 2. Parties

4. Plaintiff Rune Kraft ("Kraft") resides outside the United States and has several business offices, including in Wilmington, Delaware. He visits Arizona to manage and develop businesses and assets, and seasonally stays in Arizona.

5. Defendant Maricopa County is a county in the State of Arizona ("Government Defendant").

6. Defendants Jonathan S. Levine, Benjamin Urquhart, Joseph G. Urquhart, Daniel Tovar, Andrew Lawrence Phares and Paris Weant conduct business in Maricopa County.

7. Defendants 110 Holdings, Llc, Domestic Llc, 220 Holdings, Llc, Domestic Llc, 330 Holdings, Llc, Domestic Llc, Ariz Investments, Llc, Domestic Llc, Az Is Homes, Llc, Domestic Llc, Az Property Managers, Llc, Domestic Llc, Brandini Holdings, Llc, Domestic Llc, Brandory

1

Investments, Llc, Domestic Llc, Bron Investments, Llc, Domestic Llc, Burk West, Llc, Domestic Llc, Burkshire Investment Group, Llc, Domestic Llc, Canyon State Property Managers, Llc, Domestic Llc, Carolyn J Kildew-Arizona Trust, Carson Construction Trust, Casa Calasa, Llc, Domestic Llc, Cbj Ventures, Llc, Domestic Llc, Central Holdings, Llc, Domestic Llc, Ckaz Investments, Llc, Domestic Llc, Columbus Capital Llc, Domestic Llc, Donald Duck Development, Llc, Domestic Llc, Double J Properties, Llc, Domestic Llc, Empire J Investments, Llc, Domestic Llc, Ga Properties, Llc, Domestic Llc, Georgia Appreciation Potential, Llc, Domestic Llc, Jeffrey Irvin Holdings, Llc, Domestic Llc, Jsl Trust, Jsl Trust Dated Nov 26th 2008, Jsljml, Llc, Domestic Llc, Jonira, Llc, Domestic Llc, King J Holdings, Llc, Domestic Llc, Levine Ira, Maricopoly, Llc, Domestic Llc, Mr. Jacob Investments, Llc, Domestic Llc, Nm Properties, Llc, Domestic Llc, Perfect Prestamos, Llc, Domestic Llc, Procasa Limited Liability Company, Domestic Llc, Propiedades Perfectos, Llc, Domestic Llc, Queen E Land, Llc, Domestic Llc, Queen Kl Investments, Llc, Domestic Llc, Royal View Properties, Llc, Domestic Llc, Sky Harbor Holdings, Llc, Domestic Llc, South Central Holdings, Llc, Domestic Llc, Ted Frank Investments, Llc, Domestic Llc, The Jsl Trust, The Maryory Castrillon Az Trust Dtd 5/16/16, Ticketmanus, Llc, Domestic Llc, Vantage Fbo The Jonathan S, are businesses operated by the Defendants described in Paragraph 6 (collectively "the RICO Enterprise Defendants").

8. Defendant M. Reese is a sergeant working in the civil process division of the sheriff. [1]

9. Relief Defendants APS and the City of Scottsdale have agreements with Plaintiff to provide utility services to the Property, which the Defendants have interfered with.

---

[1] Prior to filing this complaint, Plaintiff contacted both M. Reese and Maricopa County to obtain the full name of M. Reese, but M. Reese never responded and Maricopa County responded that it would not provide his full name, only his employee serial number, S1117.

### 3. Compliance with Rule 8

10. FRCP 8(a)(1):

This is an action for civil relief under 18 U.S.C. §§ 1961 et seq., which gives this court authority pursuant to 18 U.S.C § 1964 (a), and deprivation of rights under 42 U.S.C. §§ 1981 et seq., which gives this court authority pursuant to 28 U.S.C. § 1343 (a), and the district court has jurisdiction pursuant to 28 U.S.C. § 1331.

11. FRCP 8(a)(2):

Plaintiff has a legal entitlement to business relations and property rights unhampered by schemes prohibited by the RICO predicate statutes. 18 U.S.C. §§ 1962(c), 1961(1); See *Dumas v. Major League Baseball Prop.*, 104 F.Supp.2d 1220, 1222 (S.D.Cal. 2000), aff'd sub nom. Also see *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, (9th Cir. 2002). Under Federal regulations Plaintiff has a right to require that Maricopa County and its government officials respect property rights. 42 U.S. Code § 1982. Maricopa County can only fulfill that obligation if: (1) it holds persons who are recording false and fraudulent documents accountable; (2) its officials act lawfully; and (3) it removes the false and fraudulent documents from the public records.

12. FRCP 8(a)(3):

Plaintiff seeks to have the district court order: (1) that any public recordings made related in any manner to the Defendants' violations of 18 U.S.C. § 1962 be removed based on the district court's authority pursuant to 18 U.S.C. § 1964 (a) and based on Equal Protection rights pursuant to the Due Process Clause of the Fifth Amendment and the Fourteenth Amendment as it relates to Civil Rights, 42 U.S.C. § 1982, Maricopa County shall remove the false and fraudulent documents from the public records; (2) that any transactions, including derivative transactions that has injured Plaintiff in his business and property are invalidated based on the district court's authority pursuant to 18 U.S.C. § 1964 (a) and 28 U.S.C. § 1343 (a); and (3) that the Plaintiff shall recover threefold the damages he has sustained and the cost of the suit based on the district court's authority under 18 U.S.C. § 1964 (c) and damages under 28 U.S.C. § 1343 (a); and for such other and further relief as the Court may deem just and proper.

# 4. The Fraudulent Scheme that Has Injured, <u>and Continues to Injure</u>, Plaintiff in His Business and Property.

## 4.1 Declaration of Plaintiff

I, Rune Kraft, based on personal knowledge, declare:

On April 11, 2020 I sent via email and mail the following **NOTICE OF**

**FRAUDULENT RECORDINGS**

April 11, 2020

Ms. Allister Adel
Maricopa County Attorney
225 West Madison Street
Phoenix, AZ 85003
Via E-mail

Mr. Adrian Fontes
Maricopa County Recorder
111 S. Third Ave.
Phoenix, AZ 85003
Via E-mail

Mr. Eddie Cook
Maricopa County Assessor
301 W Jefferson St.
Phoenix, AZ 85003
Via E-mail

**NOTICE OF FRAUDULENT RECORDINGS**

Dear Maricopa County Attorney Adel, Maricopa County Recorder Fontes and Maricopa County Assessor Cook:

I write to notify you that an action will be initiated against Maricopa County at the United States District Court for the District of Arizona unless you take immediate remedial steps to correct the public records for Lot One Hundred (100), THE PAVILIONS AMENDED, as set forth in Declaration of Horizontal Property Regime recorded March 20, 1985 in Document No. 85-120639 and Amended in Document No. 85-287726, and Amended in Document No. 85-561482, and re-recorded in Document No. 88-489865, and according to the plat of record in the office of the County Recorder in Maricopa County, Arizona, in Book 280 of Maps, page 26, and Plat recorded in Book 282 of Maps, page 50; TOGETHER WITH the undivided interest in and to the common

4

elements appurtenant to each unit, AKA: 7272 E. Gainey Ranch Road, Lot 100, Scottsdale, AZ 85258, APN: 175-60-236.

As detailed herein, several recordings have been made that are false and fraudulent. Arizona regulations provide that public officials with oversight authority have a responsibility to ensure public records are protected, genuine, and true. Several Arizona laws describe the elements of committing forgery, falsifying or tampering with a public record, and knowingly offering a false document for filing in an Arizona public office. Arizona Revised Statutes §§ 13-2002, 13-2407, and 39-161. Criminal consequences for these actions range from a class 4 felony to a class 6 felony.

Federal regulations require that Maricopa County and its government officials respect property rights. 42 U.S. Code § 1982.

Maricopa County can only fulfill that obligation if: (1) it holds persons who are recording false and fraudulent documents accountable; (2) its officials act lawfully; and (3) it removes the documents from the public records.

**Persons who have recorded false and fraudulent documents**

Steven Gregory Jones located at 2001 E Campbell Ave Ste 103, Phoenix, AZ 85016 (E-mail: Greg.Jones@lane-nach.com). He has made two fraudulent recordings. **Recording No. 2015-0132695** is based on a case at the U.S. District Court, State of Arizona and **Recording No. 2015-0436775** is based on a case at the Maricopa County Superior Court and I have never been served with a summons and complaint for either one of these cases. Further, both cases are based on a June 22, 2011 default judgment from Case No. 2:10-cv-01776-VBF (OP) that is void, not voidable, as it was issued by a court that lacked subject matter jurisdiction. Mr. Jones' clients lied to the court about having a contract with Rune Kraft and having made payments pursuant to such a contract to Rune Kraft. If he does not voluntarily cause the documents to be removed from the public records, Maricopa County should demand that he produce the contract and the payments made pursuant to the contract, which he cannot, and which he will have to admit when this matter becomes an action at the United States District Court for the District of Arizona, if necessary.

Charlene A. Cruz, Maureen Martha Connolly and Marion Elizabeth Mulcahy. Ms. Cruz's current address is 1400 E Southern Ave Ste 400, Tempe, AZ 85282 (E-mail: charlene.cruz@carpenterhazlewood.com). Ms. Connolly is currently not practicing law (her home address and e-mail address are available from both the undersigned and the State Bar of Arizona). Ms. Mulcahy's current address is 3001 E. Camelback Rd. Suite 130, Phoenix, AZ 85016 (E-mail: bmulcahy@mulcahylawfirm.com). They made **Recording No. 2015-0626908**.
The recording fraudulently states that Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$ 4,306.62 in lienable amounts" when in truth and in fact: Rune Kraft, an individual, and Transcycle, an unincorporated had no obligations to pay the Association any amounts; the Association had received the relevant monthly assessments from the corporation that owned the property; and included various other amounts, including attorney's fees, that are unlawful (A.R.S. § 33-1807 (A)). Only after the entry of a judgment in a civil suit can the Association obtain a lien for fees other than charges for late payment of assessments pursuant to A.R.S. § 33-1803. If they do not voluntarily cause the documents to be removed from the public records, Maricopa County should demand that they produce the checks they received from the

5

corporation, and which they will have to admit when this matter becomes an action at the United States District Court for the District of Arizona, if necessary.

### Officials who have acted unlawfully

M. Reese, a sergeant working in the civil process division of the sheriff. M. Reese's current address is, to the best knowledge of the undersigned, 201 West Jefferson Street, 2nd Floor, West Court Building, Phoenix, Arizona 85003. **Recording No. 2018-0792379** was made by M. Reese and fraudulently states that it conveys the property from Rune Kraft, an individual, and Transcycle, an unincorporated entity to Maricopoly, LLC to the extent authorized by CV2017-000765. Specifically, this is false and fraudulent as Rune Kraft, an individual, has not had any ownership interests in the property since May 19, 2011 and Transcycle, an unincorporated entity has never had any ownership interest in the property. Thus, M. Reese had nothing to convey. The document's references to CV2017-000765 and "no redemption" are fraudulent several ways: (1) at the trial on November 28, 2016 Kraft proved that he had not been the real property owner since May 19, 2011, and at that time no assessments were owed, and the Association's allegation of not having received the payments of the monthly assessments from April 2015 to at the time the trial date, was false as the Association had received the payments from the property owner, the corporation Kraft sold the property to on May 19, 2011; (2) based on the trial on January 4, 2017 an order of dismissal without prejudice was issued and it is black letter law, it is a universally applied standard in America's court system, both Federal and State, including the State of Arizona, that a court loses its jurisdiction upon the issuance of an order of dismissal without prejudice (Arizona statutory law explicitly proclaims that the remedy to a plaintiff after an order of dismissal without prejudice is to file a new lawsuit. See Justice Court Rules of Civil Procedure Rule 144 f.); and (3) the Arizona courts' acts following the order of dismissal were without jurisdiction and are nullities and this is also black letter law, they are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal, they constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. As the Arizona courts lacked jurisdiction, following the order of dismissal, the references to CV2017-000765 are references to nullities.

Neither M. Reese, nor anybody else employed by Maricopa County had any lawful authority to do such a transaction. One of Maricopa County's commissioners, after the court had lost its jurisdiction in the case, acted without jurisdiction which is not discretionary, and signed orders required to be signed by a superior court judge which he had no authority do to even if the court had proper jurisdiction, concurrently or retroactively, attempted to convey property that Kraft did not own to pay obligations that Kraft did not have. And neither M. Reese, nor anybody else employed by Maricopa County, or anybody else, contacted Kraft about the property having been sold to pay trumped up obligations, or that Kraft could redeem ownership, obviously because one cannot redeem ownership in property that one does not own. Maricopa County can voluntarily cause the recording to be voided and removed, as Maricopa County will have to admit these specific facts and issues of law when this matter becomes an action at the United States District Court for the District of Arizona, if necessary.

### Additional fraudulent recordings

It is obvious to everybody that what is going on here is fraudulent. So, who does Maricopa County get to participate with them in furthering the fraudulent scheme? Jonathan S. Levine.

6

Who is he? On his driver's license he uses this address - Unit No. 101220, 903 S. Rural Rd, Tempe, Arizona 85251. This is a vacant lot in Tempe. In public records, he uses this variant of this address - 903 S. Rural Rd #101-220, Tempe, AZ, 85281. At other times he uses 6929 N Hayden Rd Ste C4235, Scottsdale, AZ, 85250 and 3219 E Camelback Rd #801, Phoenix, AZ, 85018 as his addresses, both mailboxes at United Parcel Services stores. The e-mail address he uses is porscheasap@aol.com.

Mr. Levine, knowing that what is going on here is fraudulent which destroys the validity of the transaction he did with M. Reese using Maricopoly LLC, made **Recording No. 19-0256291**.
The recording fraudulently states that it conveys property from Maricopoly LLC to Carson Construction Trust. It is executed by Jonathan Levine, as Manager, and Mr. Levine knew that Maricopoly LLC could not convey the property as Maricopoly LLC had been thoroughly and comprehensively informed that its purported ownership interest in the property rested on fraud. Mr. Levine had both directly been informed about this via mail, e-mail and telephone, and Maricopoly LLC's attorney, Scott E. Williams, knew all of the details related to Recording No. 2015-0132695, Recording No. 2015-0436775, Recording No. 2015-0626908, and Recording No. 2018-0792379 as Kraft communicated extensively with him about these issues. Scott E. Williams is located at 7701 E. Indian School Road, Suite J, Scottsdale, Arizona 85251. (E-mail: scott@wzplegal.com)

If they do not voluntarily cause the documents to be removed from the public records, Maricopa County should demand that they produce the notices and documents they received from Rune Kraft via mail and e-mail, as well as details about Carson Construction Trust. When using trusts A.R.S. § 14-10108 and A.R.S. § 10406 require the identification of the name of the trustee and the trustee's street address. The recorded document does not show Carson Construction Trust's trustee and the address is shown as 24 W. Camelback Rd, Unit A95, Phoenix. AZ 85013 and this is actually mailbox A95 at a United Parcel Service store: Store 2460 24 W Camelback Rd. Phoenix, AZ 85013 Phone: 602 248 9300 Fax: 602 248 4484 Email: store2460@theupsstore.com

Jonathan S. Levine appears to be working with Benjamin Urquhart and Joseph G. Urquhart, and they are using a series of Arizona LLCs and trusts claiming to be based at street addresses when these addresses are mailboxes at United Parcel Service stores, making it impossible to serve them with court filings. The entities claim to be based at:

3219 E. Camelback Rd., Suite 801, Phoenix, AZ 85018
This is actually mailbox 801 at a United Parcel Service store: Store 4810 3219 East Camelback Rd. Phoenix, AZ 85018 Phone: 602 952 8830 Fax: 602 952 8693 Email: store4810@theupsstore.com

24 W. Camelback Rd, Unit A95, Phoenix. AZ 85013
This is actually mailbox A95 at a United Parcel Service store: Store 2460 24 W Camelback Rd. Phoenix, AZ 85013 Phone: 602 248 9300 Fax: 602 248 4484 Email: store2460@theupsstore.com

6929 N. Hayden Rd. Suite C4235, Scottsdale, AZ 85250
This is actually mailbox 235 at a United Parcel Service store: Store 2650 6929 N Hayden Rd Ste C4 Scottsdale, AZ 85250 Phone: 480 905 0811 Fax: 480 905 0812 Email: store2650@theupsstore.com

7

And they use these addresses not only for themselves, as their addresses, but also for their businesses and their businesses' statutory agents. And of course, under Arizona law statutory agents must have a street address so that a process server can serve court filings at that address. (A.R.S. § 29-3115).

| | | |
|---|---|---|
| L15275498 | 110 HOLDINGS, LLC | Domestic LLC |
| L15275512 | 220 HOLDINGS, LLC | Domestic LLC |
| L15343918 | 330 HOLDINGS, LLC | Domestic LLC |
| L14917079 | ARIZ INVESTMENTS, LLC | Domestic LLC |
| L15536580 | AZ IS HOMES, LLC | Domestic LLC |
| L15275487 | AZ PROPERTY MANAGERS, LLC | Domestic LLC |
| L15882967 | BRANDINI HOLDINGS, LLC | Domestic LLC |
| L15682469 | BRANDORY INVESTMENTS, LLC | Domestic LLC |
| L15249862 | BRON INVESTMENTS, LLC | Domestic LLC |
| L15259163 | BURK WEST, LLC | Domestic LLC |
| L15536569 | BURKSHIRE INVESTMENT GROUP, LLC | Domestic LLC |
| L15823210 | CANYON STATE PROPERTY MANAGERS, LLC | Domestic LLC |
| ? | CAROLYN J KILDEW-ARIZONA TRUST | ? |
| ? | CARSON CONSTRUCTION TRUST | ? |
| L15455183 | CASA CALASA, LLC | Domestic LLC |
| L15259200 | CBJ VENTURES, LLC | Domestic LLC |
| L16408112 | CENTRAL HOLDINGS, LLC | Domestic LLC |
| L15259152 | CKAZ INVESTMENTS, LLC | Domestic LLC |
| L14205067 | COLUMBUS CAPITAL LLC | Domestic LLC |
| L22484465 | DONALD DUCK DEVELOPMENT, LLC | Domestic LLC |
| L18701220 | DOUBLE J PROPERTIES, LLC | Domestic LLC |
| L18396070 | EMPIRE J INVESTMENTS, LLC | Domestic LLC |
| L14917080 | GA PROPERTIES, LLC | Domestic LLC |
| L14917104 | GEORGIA APPRECIATION POTENTIAL, LLC | Domestic LLC |
| L22484454 | JEFFREY IRVIN HOLDINGS, LLC | Domestic LLC |
| ? | JSL TRUST | ? |
| ? | JSL TRUST DATED NOV 26TH 2008 | ? |
| L14917068 | JSLJML, LLC | Domestic LLC |
| L18430134 | JONIRA, LLC | Domestic LLC |
| L16408123 | KING J HOLDINGS, LLC | Domestic LLC |
| ? | LEVINE IRA | ? |
| L20952981 | MARICOPOLY, LLC | Domestic LLC |
| L19214509 | MR. JACOB INVESTMENTS, LLC | Domestic LLC |
| L14917126 | NM PROPERTIES, LLC | Domestic LLC |
| L16408134 | PERFECT PRESTAMOS, LLC | Domestic LLC |
| L15151178 | PROCASA LIMITED LIABILITY COMPANY | Domestic LLC |
| L15455140 | PROPIEDADES PERFECTOS, LLC | Domestic LLC |
| L22129292 | QUEEN E LAND, LLC | Domestic LLC |
| L22650440 | QUEEN KL INVESTMENTS, LLC | Domestic LLC |
| L18701253 | ROYAL VIEW PROPERTIES, LLC | Domestic LLC |
| L18701231 | SKY HARBOR HOLDINGS, LLC | Domestic LLC |
| L17140387 | SOUTH CENTRAL HOLDINGS, LLC | Domestic LLC |
| L22484476 | TED FRANK INVESTMENTS, LLC | Domestic LLC |

8

| | | | |
|---|---|---|---|
| ? | THE JSL TRUST | ? | |
| ? | THE MARYORY CASTRILLON AZ TRUST DTD 5/16/16 | ? | |
| L14917148 | TICKETMANUS, LLC | Domestic LLC | |
| ? | VANTAGE FBO THE JONATHAN S | ? | |

Attorneys Marion Elizabeth Mulcahy, Paige Elizabeth Marks and Lauren Ashleigh Vie may have recently made public recordings claiming release of lien related to Recording No. 2015-0626908 based on purported satisfaction of judgment. As shown herein Recording No. 2015-0626908 is a false public recording. And as explained herein, there is no valid judgment to be satisfied or that have been lawfully satisfied. These recordings undoubtedly effort to legitimize the fraudulent scheme. Ms. Mulcahy's current address is 3001 E. Camelback Rd. Suite 130, Phoenix, AZ 85016 (E-mail: bmulcahy@mulcahylawfirm.com). Ms. Marks' current address is 3001 E. Camelback Rd. Suite 130, Phoenix, AZ 85016 (E-mail: pmarks@mulcahylawfirm.com and Ms. Vie's current address is 3001 E. Camelback Rd. Suite 130, Phoenix, AZ 85016 (E-mail: lvie@mulcahylaw.net).

## Return of all funds derived from the fraudulent recordings

To make the resolution of this matter as expeditious as possible, the recipients of funds related to these fraudulent activities are asked to voluntarily return all funds received. The Gainey Ranch Community Association, its President Karen Epstein and its Executive Director Jim Funk can cause this to be done. Their address is 7720 Gainey Ranch Rd., Scottsdale, AZ, 85258 (E-mail: the Association - grca@gaineyranchca.com, Mr. Funk - jfunk@gaineyranchca.com.)

This notice is being sent to the following Relevant Parties:

| | | |
|---|---|---|
| Carson Construction Trust | porscheasap@aol.com | |
| | scott@wzplegal.com | |
| | 24 W. Camelback Rd, Unit A95, Phoenix. AZ 85013 | By mail |
| Charlene A. Cruz | c/o bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| Karen Epstein | c/o bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| Jim Funk | c/o bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| Gainey Ranch CA | c/o bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| Steven Gregory Jones | Greg.Jones@lane-nach.com | |
| Jonathan S. Levine | porscheasap@aol.com | |
| | 6929 N Hayden Rd Ste C4235, Scottsdale, AZ, 85250 | By mail |
| | 3219 E Camelback Rd #801, Phoenix, AZ, 85018 | By mail |
| Maricopoly LLC | porscheasap@aol.com | |
| | scott@wzplegal.com | |
| | 3219 E Camelback Rd #801, Phoenix, AZ, 85018 | By mail |
| Paige Elizabeth Marks | c/o bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| Marion Elizabeth Mulcahy | bmulcahy@mulcahylawfirm.com and lvie@mulcahylaw.net | |
| M. Reese | 201 W Jefferson, 2nd Fl, W Court Bldg., Phoenix, 85003 | By mail |
| Dina Shroth | dshroth@securitytitle.com | |
| Nohemi Velasco | nvelasco@ewtaz.com | |
| Benjamin Urquhart | 16 W Encanto #112, Phoenix, AZ, 85003 | By mail |
| Joseph G Urquhart | 4720 E La Mirada Way, Phoenix, AZ, 85044 | By mail |

9

Lauren Ashleigh Vie   lvie@mulcahylaw.net
Scott E. Williams   scott@wzplegal.com

If any recipient has questions or need further information, please contact me via e-mail.

You have 10-days to notify me that the requested remedial actions have been or will be taken. If more time is needed, please contact me, and I will consider it.

Sincerely,
Rune Kraft

As of today, to the best of my knowledge, the false and fraudulent documents have not been removed from the public records of Maricopa County.

On July 10. 2020 I discovered an additional fraudulent recording, **Recording No. 20200506265,** related to a supposed transaction on June 4, 2020 between Carson Construction Trust and Andrew Lawrence Phares. Related to this recording, on July 11th I sent a letter to Andrew Lawrence Phares, Carson Construction Trust and Pioneer Title Agency. This July 11th letter was also sent at 8.30 a.m. on July 13th via email to R. Keith Newlon and Tori O'Leary of Pioneer Title Agency based in Sierra Vista, Arizona. The text of the email stated:

This concerns **Recording No. 20200506265** related to a supposed transaction on June 4, 2020 between Carson Construction Trust and Andrew Lawrence Phares.

As to the following described property "Lot One Hundred (100), THE PAVILIONS AMENDED, as set forth in Declaration of Horizontal Property Regime recorded March 20, 1985 in Document No. 85-120639 and Amended in Document No. 85-287726, and Amended in Document No. 85-561482, and re-recorded in Document No. 88-489865, and according to the plat of record in the office of the County Recorder in Maricopa County, Arizona, in Book 280 of Maps, page 26, and Plat recorded in Book 282 of Maps, page 50; TOGETHER WITH the undivided interest in and to the common elements appurtenant to each unit, AKA: 7272 E. Gainey Ranch Road, Lot 100, Scottsdale, AZ 85258, APN: 175-60-236" ("Property"), **on June 4, 2020 Carson Construction Trust did not have anything to convey to Andrew Lawrence Phares and Carson Construction Trust has never had anything to convey to anybody.**

I am attaching a notice that was sent to you on July 11, 2020 via the United States First Class Mail.

I am also attaching a notice that was sent on April 11, 2020 to the Maricopa County Attorney Adel, Maricopa County Recorder Fontes and Maricopa County Assessor Cook to explain the fraudulent activities more fully. The notice was also sent to Carson Construction Trust.

And I am attaching a notice that was sent on May 21, 2020 to an entity apparently acting in some capacity for Carson Construction Trust.

As I state in my notice:

"Finally, to Mr. Phares, I don't know how well you know the perpetrators of this fraudulent scheme or if you are one of the perpetrators. Therefore, if after reading this you believe that you have also become a victim, please contact me immediately via email, and I will work with you to revert the transactions so that you recover any funds expended."

As of today, I have not received any response from anybody, which has led me to the conclusion that the information in the July 11th letter was already known to Andrew Lawrence Phares, Carson Construction Trust and Pioneer Title Agency.

I am competent to testify to the facts set forth in this declaration and declare under the penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct.

DATED this 24th day of July 2020.

Rune Kraft

11

## 4.2 Arizona's Statute of Frauds

13. In Arizona: (1) all contracts, for which complete performance of all terms will take longer than one year to complete, must be in writing, and (2) all transactions that deal with interest in real property, whether leasehold or ownership interest, must also be in writing. See Arizona's Statute of Frauds A.R.S. § 44-101.

14. The contracts of the Gainey Ranch Community Association related to the Property: (1) are for longer than one year to complete, and have not been in writing; and (2) no transactions that deal with the Association's interest in the Property have been in writing.

15. Therefore, the Gainey Ranch Community Association:

➤ Has no legally binding contracts related to the Property.

➤ Has no enforceable contracts related to the Property.

16. Further: (A) Plaintiff has never signed any agreements promising to answer for the debt, default or miscarriage of another; (B) he has never signed any agreements of any kind with the Defendants; and (C) and he has never received any consideration of any kind from any of the Defendants.

17. Therefore, the Defendants:

➤ Have no legally binding contracts related to the Property.

➤ Have no enforceable contracts related to the Property.


## 4.3 The Courts of Maricopa County Have Been Used Without Jurisdiction, Which Means That Their Orders Are Not Voidable, But Void.

### 4.3.1 The Justice Court Lacked Jurisdiction. A.R.S. §§ 22-201 A, 22-201 B, 22-201 C, 22-201 D, 22-201 G.

18. As part of this unlawful scheme to injure Plaintiff in his business and property, the Defendants used the McDowell Mountain Justice Court unlawfully.

19. First of all, Plaintiff was injured in his business and property because the Defendants used the mail and the wire to obtain a default judgment against Plaintiff without having served him with a summons and complaint. "The requirement that jurisdiction be established as a threshold matter is 'inflexible and without exception,' " id., at 94 95 (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884)); for "jurisdiction is power to declare the law," and " 'without jurisdiction the court cannot proceed at all in any cause,' " 523 U.S., at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1869)). See *Ruhrgas AG v. Marathon Oil Co. et al.*, 526 U.S. 574 (1999). A void judgment is one which, from its inception, was a complete nullity and without legal effect. This is a universal standard in America's legal system, Federal and State.

20. Second, Plaintiff was injured in his business and property because, if an action like this is filed at a justice court, after establishing jurisdiction, the action must be docketed and determined as though originally brought in the superior court.

21. "A justice court must transfer an eviction action to the superior court whenever the amount in controversy in the complaint or in a valid counterclaim exceeds the statutory ceiling for justice courts and whenever title or ownership of the premises becomes an issue." See Rules of Procedure for Eviction Actions, Rule 16. Transfer of Cases from Justice to Superior Court.

22. Justices of the peace have jurisdiction only as affirmatively conferred on them by law. A.R.S. § 22-201 A.

23. Justices of the peace have exclusive original jurisdiction of all civil actions when the amount involved, exclusive of interest, costs and awarded attorney fees when authorized by law, is ten thousand dollars or less. A.R.S. § 22-201 B.

24. Justices of the peace have jurisdiction concurrent with the superior court in cases of forcible entry and detainer when the amount involved, exclusive of interest, costs and awarded attorney fees when authorized by law, is ten thousand dollars or less. A.R.S. § 22-201 C.

13

25. Justices of the peace have jurisdiction to try the right to possession of real property when title or ownership is not a subject of inquiry in the action. If in any such action the title or ownership of real property becomes an issue, the justice shall so certify in the court record, at once stop further proceedings in the action and forward all papers, together with a certified copy of the court record in the action, to the superior court, where the action shall be docketed and determined as though originally brought in the superior court. A.R.S. § 22-201 D and G.

### 4.3.2 The Superior Court Lacked Jurisdiction. Justice Court Rules of Civil Procedure Rule 144 f.

26. In the action initiated by the Association against Kraft, on January 4, 2017 an order of dismissal without prejudice was issued at the McDowell Mountain Justice Court. It is black letter law, it is a universally applied standard in America's court system, both Federal and State, including the State of Arizona, that a court loses its jurisdiction upon the issuance of an order of dismissal without prejudice. Arizona statutory law explicitly proclaims that the remedy to a plaintiff after an order of dismissal without prejudice is to file a new lawsuit. See Justice Court Rules of Civil Procedure Rule 144 f. And that Arizona requires a process other than what has occurred in the HOA action is confirmed by numerous cases. Thus, this is a well-known legal standard. The law is not murky, and the Arizona courts have acted in defiance.

27. The Arizona courts' acts following the order of dismissal were without jurisdiction and are nullities. This is black letter law. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. *Elliott v. Lessee of Piersol*, 26 U.S. 328, 1 Pet. 328 (1828).

14

28. As the Arizona courts lacked jurisdiction, the remaining issues are essentially nullities. And Kraft has labeled this scheme as rule of deals because it is based on deals, not law and the rule of law.

### 4.4 For the Purpose of Obtaining Money and Property the Scheme to Defraud Was Advanced, Concealed and Furthered by Using the Mail and the Wire to Corrupt the Public Records of Maricopa County, Which Constitutes A Pattern of Racketeering Activity. 18 U.S.C. §§ 1961(1), 1961(5)

#### 4.4.1 Arizona's Criminal Statutes for Fraudulent Public Recordings. A.R.S. §§ 13-2002, 13-2407, 39-161

29. As detailed herein, several recordings have been made that are false and fraudulent. Arizona regulations provide that public officials with oversight authority have a responsibility to ensure public records are protected, genuine, and true. Several Arizona laws describe the elements of committing forgery, falsifying or tampering with a public record, and knowingly offering a false document for filing in an Arizona public office. Arizona Revised Statutes §§ 13-2002, 13-2407, and 39-161. Criminal consequences for these actions range from a class 4 felony to a class 6 felony.

#### 4.4.2 Mail Fraud and Wire Fraud Related to Recording No. 2018-0792379

30. In October of 2018, the Defendants used the mail and the wire related to Recording No. 2018-0792379. The Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of mail fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1341, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein. And the Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of wire fraud and/or devised an overall scheme or artifice to defraud, and are

15

attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1343, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein.

31. The recording fraudulently states that it conveys the Property from Rune Kraft, an individual, and Transcycle, an unincorporated entity to Maricopoly, LLC to the extent authorized by CV2017-000765. Specifically, this is false and fraudulent as Rune Kraft, an individual, has not had any ownership interests in the Property since May 19, 2011 and Transcycle, an unincorporated entity has never had any ownership interest in the Property. The document's references to CV2017-000765 and "no redemption" are fraudulent several ways: (1) at the trial on November 28, 2016 Kraft proved that he had not been the real property owner since May 19, 2011, and at that time no assessments were owed, and the Association's allegation of not having received the payments of the monthly assessments from April 2015 to at the time the trial date, was false as the Association had received the payments from the property owner, the corporation Kraft sold the Property to on May 19, 2011; (2) based on the trial on January 4, 2017 an order of dismissal without prejudice was issued and it is black letter law, it is a universally applied standard in America's court system, both Federal and State, including the State of Arizona, that a court loses its jurisdiction upon the issuance of an order of dismissal without prejudice (Arizona statutory law explicitly proclaims that the remedy to a plaintiff after an order of dismissal without prejudice is to file a new lawsuit. See Justice Court Rules of Civil Procedure Rule 144 f.); and (3) the Arizona courts' acts following the order of dismissal were without jurisdiction and are nullities and this is also black letter law, they are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal, they constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. As the Arizona courts lacked jurisdiction, following the order of dismissal, the references to CV2017-000765 are references to nullities. Neither M. Reese, nor anybody else employed by Maricopa County had any lawful authority to do such a transaction. One of Maricopa County's

16

commissioners, after the court had lost its jurisdiction in the case, acted without jurisdiction which is not discretionary, and signed orders required to be signed by a superior court judge which he had no authority do to even if the court had proper jurisdiction, concurrently or retroactively, attempted to convey property that Kraft did not own to pay obligations that Kraft did not have. And neither M. Reese, nor anybody else employed by Maricopa County, or anybody else, contacted Kraft about the Property supposedly having been sold to pay trumped up obligations, or that Kraft could redeem ownership, obviously because one cannot redeem ownership in property that one does not own.

32. Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

33. Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

### 4.4.3 Mail Fraud and Wire Fraud Related to Recording No. 19-0256291

34. In March of 2019, the Defendants used the mail and the wire related to Recording No. 19-0256291. The Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of mail fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1341, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein. And the Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of wire fraud and/or devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1343, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein.

35. The recording fraudulently states that it conveys property from Maricopoly LLC to Carson Construction Trust. It is executed by Jonathan Levine, as Manager, and Mr. Levine knew that Maricopoly LLC could not convey the Property as Maricopoly LLC had been thoroughly and comprehensively informed that its purported ownership interest in the Property rested on fraud.

Mr. Levine had both directly been informed about this via mail, e-mail and telephone, and Maricopoly LLC's attorney, Scott E. Williams, knew all of the details related to Recording No. 2015-0132695, Recording No. 2015-0436775, Recording No. 2015-0626908, and Recording No. 2018-0792379 as Kraft communicated extensively with him about these issues.

36. Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

37. Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

### 4.4.4 Mail Fraud and Wire Fraud Related to Recording No. 20200506265

38. In June of 2020, the Defendants used the mail and the wire related to Recording No. 20200506265. The Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of mail fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1341, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein. And the Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of wire fraud and/or devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1343, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein.

39. The recording fraudulently states that it conveys property from Carson Construction Trust to Andrew Lawrence Phares. But Carson Construction Trust could not convey the Property as Carson Construction Trust had been thoroughly and comprehensively informed that its purported ownership interest in the Property rested on fraud. Carson Construction Trust received the notice that was sent on April 11, 2020 to the Maricopa County Attorney Adel, Maricopa County Recorder Fontes and Maricopa County Assessor Cook to explain the fraudulent activities more fully. And Carson Construction Trust was further notified in a notice that was sent on May 21, 2020 to an entity apparently acting in some capacity for Carson Construction Trust.

40. And as explained in the Declaration above, Andrew Lawrence Phares has acted as knowing about the fraud and the fraudulent scheme and as one of the perpetrators of the fraudulent scheme.

41. Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

42. Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

### 4.5 The Proceeds from the Fraud and Fraudulent Scheme Were Used to Operate the Associated-In-Fact Enterprise, Which Constitutes a Conspiracy to Commit Money Laundering

43. Related to Recording No. 2018-0792379, Recording No. 19-0256291 and Recording No. 20200506265 it was a part of the conspiracy that Defendants would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among bank accounts located in Phoenix, Arizona and elsewhere in the United States to various bank accounts located in Arizona and elsewhere in the United States, including as follows:

a. Defendants and others would cause banks to transfer funds into bank accounts located in the State of Arizona which were maintained by the Defendants;

b. Defendants and others would subsequently cause the transfer of funds in amounts exceeding $10,000 from bank accounts located in the State of Arizona into bank accounts located in Arizona and elsewhere in the United States; and

c. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts located in Arizona and elsewhere in order for the Defendants to exercise exclusive control over the funds.

44. It was further a part of the conspiracy that Defendants and others would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among

bank accounts in Arizona and elsewhere in the United States into bank accounts in the State of Arizona and elsewhere, as follows:

a. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts in Arizona and elsewhere in order to pay entities who had to be included as part of the fraudulent scheme; and

b. Defendants would make thousands of dollars of corrupt payments to entities that aided in the fraudulent activities in the State of Arizona and elsewhere and these entities, in turn, would transport the funds and deposit them into bank accounts at financial institutions in the United States.

45. Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 4.6  The Defendants Are An "Enterprise". 18 U.S.C. § 1961(4)

46. Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4)

47. The RICO Enterprise Defendants, their employees, their members, their officers, and their attorneys are an "enterprise". See 18 U.S.C. § 1961(4).

48. The Supreme Court of the United States has also approved of both legitimate and illegitimate enterprises, even though the statute does not encompass both explicitly. See *United States v. Turkette*, 452 U.S. 576, 580-87 (1981).

49. This action is based upon violations of federal criminal statutes (see 18 U.S.C. § 1961(1)(B)). The nexus with interstate commerce is thus necessarily established by the commission of the underlying federal crime. See *United States v. Urban*, 404 F.3d 754, 767 (3d

Cir. 2005) (stating that the government/plaintiff "need only prove that Hobbs Act extortion *potentially* affected interstate commerce"). Moreover, because the U.S. Constitution confers the postal powers upon the federal government, acts of mail fraud, even intrastate use of the mails, have an inherent nexus with interstate commerce. *United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996). Defendants' Enterprise engages in, and its activities have an effect on, interstate commerce in connection with *inter alia*, the Enterprise's business of acting based on property on Gainey Ranch, including tampering/interfering with out-of-state person's utility services, which is a class 6 felony in Arizona. ARS 13-3724, coercing businesses and individuals to participate in its fraudulent schemes and suing for alleged infringement of certain issues without an objective basis and for the illegitimate purpose of bolstering the *in terrorem* effect of its fraudulent schemes. The Enterprise uses the instrumentalities of interstate travel, interstate mailings, and interstate wires, and it purchases goods and services from various U.S. states – including in connection with the Defendants' unlawful activities. In *United States v. Beasley*, 72 F.3d 1518 (11th Cir.), *cert. denied*, 518 U.S. 1027 (1996), the court held that "[t]o satisfy [RICO's] interstate commerce requirement, only a slight effect on interstate commerce is required." *Id.* at 1526; see also *United States v. Riddle*, 249 F.3d 529, 538 (6th Cir.), *cert. denied*, 534 U.S. 930 (2001) ("a *de minimus* connection suffices for a RICO enterprise that 'affects' interstate commerce"). Furthermore, the planned community Gainey Ranch markets itself throughout the United States and the world as a destination to visit, stay and live, and includes places of public accommodation, which are considered part of the interstate commerce system of the United States and thus regulated by the United States Congress. E.g. see 42 U.S. C. § 2000a(b).

21

50. This illegal scheme systematically: uses the mail and the wire to transmit false and fraudulent documents in violation of 18 U.S.C. §§ 1341 and 1343; and involves conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h). Following in the footsteps of the Supreme Court in *Turkette,* under a preponderance standard this associated-in-fact enterprise (the actor) has engaged in a series of predicate acts, 18 U.S.C. § 1961(1), that are defined as racketeering activity because the acts violate the federal mail and wire fraud statutes 18 U.S.C. §§ 1341 and 1343 and the enterprise engaged in conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1962(d). The RICO Enterprise Defendants, their employees, their members, their officers, and their attorneys have violated the Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962.

51. The Defendants exploited misrepresentations and/or omissions and implemented a campaign to force Plaintiff and others to bear the burden of investigating and applying law to them. As stated herein, the Defendants, individually or collectively, and through the conduct of the Enterprise, engaged in numerous acts of fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such schemes, for instance, conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1962(d), acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h), which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, beginning at least as early as October 2018 and continuing to date. Having knowledge of the falsity and/or fraudulent incompleteness of the representations, all in an effort to deprive the

Defendants' targets of money and property that Defendants' had no right to seek or obtain. *Rotella v. Wood*, 528 U.S. 549 (2000)

## 5. The Injuries to Plaintiff's Business and Property by a Reason of a Violation of 18 U.S.C. § 1962

### 5.1 Financial Loss Based on Contractual Rights

52. Plaintiff's business has contractual rights that provides him with revenues based on a set amount per hour. The table below shows the hourly contractual rate by year for the relevant period.

| Year | Hourly Contractual Rate |
|------|-------------------------|
| 2018 | 1,984.94 |
| 2019 | 2,084.19 |
| 2020 | 2,188.40 |

53. The Defendants' predicate acts caused Plaintiff a financial loss as he was deprived of his hourly contractual rate for each hour that he had to spend on addressing the Defendants' activities in court. The table below shows the number of hours by year.

| Year | Financial Loss Hours |
|------|----------------------|
| 2018 | 52 |
| 2019 | 102 |
| As of 07.24.20 | 54 |

54. Plaintiff is complaining about a fraud that caused him a money loss.

55. The Defendants made public recordings and court filings that, had they not made them, would not have deprived Plaintiff of his hourly contractual rate for each hour that he had to spend on addressing their activities in court.

23

## 5.2 Financial Loss Based on Proprietary Interest in Real Property

56. Plaintiff has contractual rights to use the Property [2] [3] [4]. The table below shows the number of days that he has been unable to use the real property.

| Year | Days Unable to Use Property |
|---|---|
| 2018 | 33 |
| 2019 | 365 |
| As of 07.24.20 | 206 |

57. The Defendants' predicate acts caused Plaintiff an injury to property of $ 1,000 for each day that he was deprived of his contractual right to use the Property.

58. The Defendants took from the Property owner property that, had they not taken it, would not have deprived Plaintiff of his contractual right to use the Property. [5]

---

[2] Lot One Hundred (100), THE PAVILIONS AMENDED, as set forth in Declaration of Horizontal Property Regime recorded March 20, 1985 in Document No. 85-120639 and Amended in Document No. 85-287726, and Amended in Document No. 85-561482, and re-recorded in Document No. 88-489865, and according to the plat of record in the office of the County Recorder in Maricopa County, Arizona, in Book 280 of Maps, page 26, and Plat recorded in Book 282 of Maps, page 50; TOGETHER WITH the undivided interest in and to the common elements appurtenant to each unit.

[3] The mail and wire fraud statutes prohibit schemes to defraud for the purpose of "obtaining money or property." For purposes of standing under section 1962(c), however, the money or property obtained by the defendant need not be the plaintiff's money or property, provided the plaintiff is directly injured by the defendants' unlawful scheme. *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633, 638 (7th Cir. 2013).

[4] Under Arizona law, a contractual right is a property right protected by the Fourteenth Amendment.

[5] The ruling written by Circuit Judge Richard A. Posner, widely considered to be one of the most influential legal scholars in the United States, in *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633, 638 (7th Cir. 2013) is to the point:

## 5.3 Financial Loss Based on Proprietary Interest in Information Technology Property

59. Plaintiff has information technology property at the Property. He uses the information technology property for proprietary business purposes and since the information is extremely sensitive, the information technology property is not connected to the internet or any external networks.

---

They argue that the plaintiffs were not victims of mail fraud because they had no property interest in the tax liens that they were prevented by the fraud from buying. The premise is true but irrelevant. "Any person *injured in his business* or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains...." 18 U.S.C. § 1964(c) (emphasis added); see also *Maiz v. Virani,* 253 F.3d 641, 662–64 (11ᵗʰ Cir.2001); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1343 (2d Cir.1994). The plaintiffs were deprived of the profit they would have made had the fraud not prevented them from being awarded as many tax liens as they would have been awarded otherwise.

It is true that the criminal act on which the RICO claim is based—mail fraud—requires that the defendants have obtained "money or property" by fraud. 18 U.S.C. § 1341. But tax liens, which is what the defendants obtained, are property. *United States v. Security Industrial Bank,* 459 U.S. 70, 76–77, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982); *In re Tarnow,* 749 F.2d 464, 466 (7th Cir.1984). In this case they are property of Cook County. The property to which section 1341 refers need not be the plaintiffs', provided they are directly injured by the defendants' unlawful acquisition of the property. See *Phoenix Bond & Indemnity Co. v. Bridge,* 477 F.3d 928, 932 (7ᵗʰ Cir.2007), affirmed, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.,* 271 F.3d 374, 378, 382–83 (2d Cir.2001); *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.,* 18 F.3d 260, 260, 263 (4th Cir.1994). As they were: the defendants took from the City property that, had they not taken it, would have been obtained by the plaintiffs at the same time in the same place—the auction room.

The judge was correct to deny the defendants' request that he instruct the jury that it could not find for the plaintiffs "if there has been only a deprivation of intangible rights to a fair opportunity to obtain money or property." The instruction was irrelevant. The plaintiffs were not complaining about a deprivation of intangible rights, such as a right to honest service by an agent; they were complaining about a fraud that caused them a money loss.

60. Plaintiff uses the information technology property to generate about $ 60,000 in monthly revenues.

61. The Defendants' predicate acts caused Plaintiff a financial loss of $ 2,000 for each day that he was deprived of his information technology property.

62. Plaintiff is complaining about a fraud that caused him a financial loss.

63. The Defendants took from the Property owner property that, had they not taken it, would not have deprived Plaintiff of $ 2,000 for each day that he was deprived of his information technology property.

## 5.4 Money Loss Based on Proprietary Rights

64. Plaintiff has proprietary contractual rights papers at the Property, which are used for a wide variety of purposes, including litigation.

65. The Defendants' predicate acts may cause Plaintiff hundreds of millions of dollars in money losses if he loses the right to pursue claims based on statute of limitations or the proprietary contractual rights papers have been in any way impaired.

66. Plaintiff is complaining about a fraud that caused him a money loss.

67. The Defendants took from the Property owner property that, had they not taken it, would not have deprived Plaintiff of the right to pursue claims based on statute of limitations or the proprietary contractual rights papers being impaired in any way.

68. Currently, Plaintiff is unable to assess the exact amount of losses because he has not been able to be at the Property since December 17, 2018 because of the Defendants' predicate acts and this unlawful scheme.

### 5.5 Loss of Property or Impairment to Property

69. Plaintiff has the following property at the Property.

| Property | Value |
|---|---|
| Art | $300,000 |
| Furniture | $100,000 |
| Draperies/window coverings | $20,000 |
| Kitchen misc. | $30,000 |
| Electronics | $30,000 |
| Books | $20,000 |
| Lamps | $20,000 |
| Clothing | $100,000 |
| Watches | $30,000 |
| Vehicle | $20,000 |
| Tools | $10,000 |
| Bicycles | $2,000 |

70. The Defendants' predicate acts may cause an injury to property if any of his property at the Property is lost or impaired.

71. Plaintiff is complaining about a fraud that caused him a property loss.

72. The Defendants took from the Property owner property that, had they not taken it, would not have deprived Plaintiff of his property at the Property.

73. At this time, Plaintiff is unable to assess the exact amount of losses because he has not been able to be at the Property since December 17, 2018. because of the Defendants' predicate acts and this unlawful scheme.

## 6. The United States of America's Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962, Has Been Violated by the RICO Enterprise Defendants.

### 6.1 Conspiracy to Commit Mail Fraud and Wire Fraud Violation of 18 U.S.C. § 1962(d)

## THE CONSPIRACY

74. From in or about at least October 2018, through present, the Defendants did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, to commit certain offenses against Plaintiff, that is:

(a) to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and causing to be delivered certain mail matter by the United States Postal Service and any private or commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341;

## THE PURPOSE OF THE CONSPIRACY

75. It was a purpose of the conspiracy that the Defendants and their conspirators would obtain property through false pretenses, representations and promises, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds and property.

## MANNER AND MEANS OF THE CONSPIRACY

76. The manner and means by which the Defendants and their conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

77. It was a part of the conspiracy that the Defendants and their conspirators would create and cause to be created false public recordings, through, among other things, the following means:

### Void orders

78. As explained in Section 4.4.2 Recording No. 2018-0792379 rests on a void order.

79. And as explained in Declaration of Plaintiff, Jonathan S. Levine were thoroughly and comprehensively informed that Recording No. 2018-0792379 rested on a void order and that the purported ownership interest in the Property by Maricopoly LLC rested on fraud. Mr. Levine had both directly been informed about this via mail, e-mail and telephone, and Maricopoly LLC's attorney, Scott E. Williams, knew all of the details related to Recording No. 2015-0132695, Recording No. 2015-0436775, Recording No. 2015-0626908, and Recording No. 2018-0792379 as Kraft communicated extensively with him about these issues. Maricopa County could not convey the Property. Maricopoly LLC has never had any ownership interest in the Property.

80. And as explained in Section 4.3.1 the justice court lacked both personal jurisdiction and subject matter jurisdiction related to the action that was initiated against Plaintiff at the justice court with the upshot that the orders issued by the justice court are void from their inception, were complete nullities and without legal effect.

**Use of the public recording system to record fraudulent transactions**

81. As explained in Section 4.4.3 Recording No. 19-0256291 fraudulently states that it conveys property from Maricopoly LLC to Carson Construction Trust. It is executed by Jonathan Levine, as Manager, and Mr. Levine knew that Maricopoly LLC could not convey the Property as Maricopoly LLC had been thoroughly and comprehensively informed that its purported ownership interest in the Property rested on fraud. Mr. Levine had both directly been informed about this via mail, e-mail and telephone, and Maricopoly LLC's attorney, Scott E. Williams, knew all of the details related to Recording No. 2015-0132695, Recording No. 2015-0436775, Recording No. 2015-0626908, and Recording No. 2018-0792379 as Kraft communicated extensively with him about these issues. Maricopoly LLC could not convey the Property.

**Use of the public recording system to record fraudulent transactions**

82. As explained in Section 4.4.4 Recording No. 20200506265 fraudulently states that it conveys property from Carson Construction Trust to Andrew Lawrence Phares. But Carson

Construction Trust could not convey the Property as Carson Construction Trust had been thoroughly and comprehensively informed that its purported ownership interest in the Property rested on fraud. Carson Construction Trust received the notice that was sent on April 11, 2020 to the Maricopa County Attorney Adel, Maricopa County Recorder Fontes and Maricopa County Assessor Cook to explain the fraudulent activities more fully. And Carson Construction Trust was further notified in a notice that was sent on May 21, 2020 to an entity apparently acting in some capacity for Carson Construction Trust. Carson Construction Trust could not convey the Property.

83. And as explained in the Declaration of Plaintiff, Andrew Lawrence Phares has acted as knowing about the fraud and the fraudulent scheme and as one of the perpetrators of the fraudulent scheme.

## OVERT ACTS

84. In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the conspirators committed and caused to be committed, in the District of Arizona and elsewhere, at least one of the following overt acts, among others:

85. On October 18, 2018, the Defendants caused a fraudulent public recording to be filed with the Maricopa County Recorder. None of the parties listed as purportedly having an ownership interest in the Property that could be conveyed had any ownership interest in the Property that could be conveyed.

86. On March 8, 2019, the Defendants caused a fraudulent public recording to be filed with the Maricopa County Recorder. The party listed as purportedly having an ownership interest in the Property that could be conveyed did not have an ownership interest in the Property that could be conveyed.

87. On June 4, 2020, the Defendants caused a fraudulent public recording to be filed with the Maricopa County Recorder. The party listed as purportedly having an ownership interest in the Property that could be conveyed did not have an ownership interest in the Property that could be conveyed.

88. The acts alleged in Predicate Acts One through Nine of the Complaint are realleged and incorporated herein as additional overt acts in furtherance of the conspiracy and to achieve the objects and purpose thereof.

89. All in violation of Title 18, United States Code, Section 1962(d).

## 6.2  Mail Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

90. Paragraphs 1 through 89 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

91. From in or about at least October 2018, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### PURPOSE OF THE SCHEME AND ARTIFICE

92. It was a purpose of the scheme and artifice that the Defendants and their co-schemers would obtain claims against Plaintiff' through false pretenses and representations, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds and property.

### SCHEME AND ARTIFICE

93. Paragraphs 76 through 83 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## USE OF THE MAILS

94. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly deposited and caused to be deposited the matters and things listed below, and caused the matters and things to be sent and delivered, by private and commercial interstate carrier and by the United States Postal Service:

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF MAIL FRAUD |
|---|---|---|
| 1 | 18-Oct-18 | Mail matter containing a document to be recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.2 herein. The document was caused to be sent and delivered via United States Postal Service to the Maricopa County Recorder in Phoenix, Arizona from Empire West Title Agency in Phoenix, Arizona by Jonathan S. Levine |
| 2 | 21-Oct-18 | Mail matter containing a document publicly recorded at the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.2 herein. The document was caused to be sent and delivered via United States Postal Service from the Maricopa County Recorder in Phoenix, Arizona to Jonathan S. Levine in Phoenix, Arizona by Jonathan S. Levine |
| 3 | 8-Mar-19 | Mail matter containing a document to be recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.3 herein. The document was sent and delivered via United States Postal Service to the Maricopa County Recorder in Phoenix, Arizona from Jonathan S. Levine in Phoenix, Arizona |
| 4 | 11-Mar-19 | Mail matter containing a document publicly recorded at the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.3 herein. The document was caused to be sent and delivered via |

| | | | United States Postal Service from the Maricopa County Recorder in Phoenix, Arizona to Carson Construction Trust in Phoenix, Arizona by Jonathan S. Levine |
|---|---|---|---|
| 5 | 4-Jun-20 | | Mail matter containing a document to be recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.4 herein. The document was caused to be sent and delivered via United States Postal Service to the Maricopa County Recorder in Phoenix, Arizona from Pioneer Title Agency in Sierra Vista, Arizona by Paris Weant |
| 6 | 7-Jun-20 | | Mail matter containing a document publicly recorded at the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.4 herein. The document was caused to be sent and delivered via United States Postal Service from the Maricopa County Recorder in Phoenix, Arizona to Andrew Lawrence Phares in Phoenix, Arizona by Paris Weant |

95. Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

### 6.3  Wire Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

96. Paragraphs 1 through 95 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

97. From in or about at least October 2018, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, known and unknown, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

33

## PURPOSE OF THE SCHEME AND ARTIFICE

98. It was a purpose of the scheme and artifice to enrich the Defendants and others at the expense of Plaintiff and others through false pretenses, representations and promises, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds and property.

## SCHEME AND ARTIFICE

99. Paragraphs 76 through 83 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## USE OF THE WIRES

100. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF WIRE FRAUD |
|---|---|---|
| 7 | 18-Oct-18 | Wire transmission of document recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.2 herein. The document was caused to be sent to the server of the Maricopa County Recorder in Phoenix, Arizona, from the server of Empire West Title Agency in Phoenix, Arizona by Jonathan S. Levine |
| 8 | 8-Mar-19 | Wire transmission of document recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.3 herein. |

34

| | | The document was caused to be sent to the server of the Maricopa County Recorder in Phoenix, Arizona from the server of Jonathan S. Levine by Jonathan S. Levine |
|---|---|---|
| 9 | 4-Jun-20 | Wire transmission of document recorded with the Maricopa County Recorder. The document was false and fraudulent as detailed in Section 4.4.4 herein. The document was caused to be sent to the server of the Maricopa County Recorder in Phoenix, Arizona from the server of Pioneer Title Agency in Sierra Vista, Arizona by Paris Weant |

101. Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 6.4  Conspiracy to Commit Money Laundering. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

102. Paragraphs 1 through 101 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

### THE CONSPIRACY TO COMMIT MONEY LAUNDERING

103. Beginning in or around at least October 2018, the exact date being unknown to Plaintiff, through present, in the District of Arizona and elsewhere, the Defendants did knowingly and intentionally conspire, combine, confederate, and agree with each other, to transport, transmit, or transfer a monetary instrument-and funds from a place in the United States to or through a place inside the United States, or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, mail fraud, and fraud in connection with a case filed in a Court of the United States, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## MANNER AND MEANS OF THE CONSPIRACY

104. The manner and means by which the Defendants and their co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

105. It was a part of the conspiracy that Defendants would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among bank accounts located in Phoenix, Arizona and elsewhere in the United States to various bank accounts located in Arizona and elsewhere in the United States, including as follows:

a. Defendants and others would cause banks to transfer funds into bank accounts located in the State of Arizona which were maintained by the Defendants;

b. Defendants and others would subsequently cause the transfer of funds in amounts exceeding $10,000 from bank accounts located in the State of Arizona into bank accounts located in Arizona and elsewhere in the United States; and

c. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts located in Arizona and elsewhere in order for the Defendants to exercise exclusive control over the funds.

106. It was further a part of the conspiracy that Defendants and others would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among bank accounts in Arizona and elsewhere in the United States into bank accounts in the State of Arizona and elsewhere, as follows:

a. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts in Arizona and elsewhere in order to pay entities who had to be included as part of the fraudulent scheme; and

b. Defendants would make thousands of dollars of corrupt payments to entities that aided in the fraudulent activities in the State of Arizona and elsewhere and these entities, in turn, would transport the funds and deposit them into bank accounts at financial institutions in the United States.

107. Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 7. The United States of America's Civil Rights Statute for Property Rights, 42 U.S.C. § 1982, Has Been Violated by the Government Defendant

### 7.1 Employees of Maricopa County Engaged in Fraud.

108. As shown in Section 4.1 herein, no employee of Maricopa County, including M. Reese, could convey the Property that Kraft did not own to pay Kraft's purported obligations.

109. And as shown in Section 4.1 herein, no employee of Maricopa County, including M. Reese, had any ownership interest in the Property to convey.

110. Arizona's Statute of Frauds, A.R.S. § 44-101, declares, in relevant part:

No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

2. To charge a person upon a promise to answer for the debt, default or miscarriage of another.

6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.

7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission.

A.R.S. §§ 44-101 (2), (6) and (7)

37

111. As Kraft sold 100% of his ownership interest in the Property on May 19, 2011:

- No employee of Maricopa County, including M. Reese, could convey the Property to answer for the debt, default or miscarriage of Kraft, and doing so violated Arizona's Statute of Frauds, A.R.S. § 44-101 (2).

- No employee of Maricopa County, including M. Reese, could convey the Property because neither Maricopa County nor any of its employees had a written agreement with the owner of the Property authorizing the conveyance, and doing so violated Arizona's Statute of Frauds, A.R.S. §§ 44-101 (6) and (7).

112. Employees of Maricopa County, including M. Reese, engaged in fraud when they in October of 2018, 7.5 years (89 months) after Kraft sold 100% of his ownership interest in the Property, purportedly sold his ownership interest in the Property.

113. Employees of Maricopa County, including M. Reese, further engaged in fraud by furthering the premise that Kraft could redeem the Property interests he sold in May of 2011 in 2018, and doing so violated Arizona's Statute of Frauds, A.R.S. §§ 44-101 (2), (6) and (7).

114. And no employee of Maricopa County, including M. Reese, contacted Kraft about the Property supposedly having been sold to pay trumped up obligations, or that Kraft could redeem ownership, obviously because one cannot redeem ownership in property that one do not own, which is fraudulent when such representations are made in public recordings.

## 7.2 Plaintiff Was Deprived of Constitutional Rights and Federal Statutory Rights.

115. Plaintiff's rights were deprived, constitutional rights and federal statutory rights. As to 42 U.S.C. §§ 1981 et seq., the law was designed and clearly intended to benefit Plaintiff and similarly situated persons, resulting in the creation of federal rights that can be protected by section 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

116. The alleged violator is Maricopa County, the political subdivision of the State of Arizona tasked with ensuring that the public recording system for real properties located in the political subdivision are true and correct, operate in a safe and sound manner, and comply with

38

applicable laws and regulations. Maricopa County is run by county government officials and county employees.

117. Based on Equal Protection rights pursuant to the Due Process Clause of the Fifth Amendment and the Fourteenth Amendment as it relates to Civil Rights, 42 U.S.C. § 1982, Plaintiff has a right to have Maricopa County remove the false and fraudulent documents from the public records and recover damages to his person or property under 28 U.S.C. § 1343 (a).

## 8. Plaintiff Has Constitutional Standing. Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife*

118. A party seeking to use this district court must present an "actual controversy" in order to satisfy the "case or controversy" requirement of Article III.

119. The Defendants are injuring Plaintiff's in his business and property, as detailed in Section 5 herein. The unlawful conduct described herein is also causing damages to Plaintiff's person by impairing his personal time and smearing his good name.

120. The Plaintiff presents an "actual controversy" and thus satisfies the controversy requirement of Article III.

121. Like any other federal court plaintiff, a claimant seeking relief under the RICO Act must also satisfy the three requirements for constitutional standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

122. The law of standing has its roots in Article III's case and controversy requirement. *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *DaimlerChrysler Corporation v. Cuno*, 547 U.S. 332, 340-41 (2006).

123. The U.S. Supreme Court has established a three-part test for standing. The "irreducible constitutional minimum of standing" requires the plaintiff to establish:

39

First ... an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); see also *Summers,* 555 U.S. at 493.

124. The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

125. As detailed herein, this is a controversy pursuant to Article III of the United States Constitution § 2, cl.1. Kraft has constitutional standing to defeat and end this fraudulent scheme. This complaint details: injury in fact, the first element of *Lujan* at 560-61; that the injury in fact is fairly traceable to the defendants' challenged actions, the second element of *Lujan* at 560-61; and that "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision", the third element of *Lujan* at 560-61.

## 9. Plaintiff Has Statutory Standing. 18 U.S.C. § 1964(c) and 28 U.S.C. § 1343 (a).

126. Under RICO, "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court" for civil damages. 18 U.S.C. § 1964(c). This statute is quite similar to the antitrust statute granting standing to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," 15 U.S.C. § 15(a), and consequently the two have been interpreted in tandem. *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

40

127. To have a property interest protected by the Fourteenth Amendment, Plaintiff must have "more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). An entitlement of that magnitude arises when "statutes[,] regulations [or a contract] ... establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Id.* (quoting *Fincher v. South Bend Heritage Found.,* 606 F.3d 331, 334 (7th Cir.2010)). See *Santana v. Cook County Bd. of Review,* 679 F.3d 614, 623 (7th Cir. 2012).

128. Plaintiff claims a property interest protected by the Fourteenth Amendment based on contracts and ownership of physical assets. *Khan v. Bland,* 630 F.3d 519, 527 (7th Cir.2010), *cert. denied,* —— U.S. ——, 132 S.Ct. 754, 181 L.Ed.2d 481 (2011).

129. Plaintiff is applying 42 U.S.C. § 1983 to the facts. This statute provides Plaintiff the authority to bring an action at law, suit in equity, or other proper proceeding for redressing deprivation of any rights secured by the Constitution and laws of the United States.

> To state a claim under 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330 -331 (1986)); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).
>
> *West v. Atkins*, 487 U.S. 42 (1988) at II

130. Plaintiff fulfills the first requirement by alleging a violation of his rights secured by his constitutional Equal Protection rights pursuant to the Due Process Clause of the Fifth Amendment and the Fourteenth Amendment as it relates to Civil Rights. 42 U.S. Code Chapter 21. 42 U.S.C. §§ 1981 et seq.

131. The second essential element is met as the alleged violator is a political subdivision of the State of Arizona tasked with ensuring that the public recording system for real properties located in the political subdivision are true and correct, operate in a safe and sound manner, and comply with applicable laws and regulations. Maricopa County is run by county government officials and county employees. Plaintiff is subjected to conduct under color of law, and this conduct deprived him of rights guaranteed under the U.S. Constitution and federal law. Misuse of power, possessed by virtue of law and made possible only because the wrongdoer is clothed with the authority of law, is action taken 'under color of' law. *United States v. Classic,* 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941]; Accord, *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (adopting Classic standard for purposes of 1983) (overruled in part on other grounds, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 695 -701 (1978)); *Polk County v. Dodson*, 454 U.S. 312, 317 -318 (1981); id., at 329 (dissenting opinion); *Ex parte Virginia*, 100 U.S. 339, 346, 25 L.Ed. 676; *Home Telephone & Telegraph Co. v. Los Angeles*, 227 U.S. 278, 287, et seq., 33 S.Ct. 312, 314, 57 L.Ed. 510; *Hague v. C.I.O.*, 307 U.S. 496, 507, 519, 59 S.Ct. 954, 960, 965, 83 L.Ed. 1423; cf. Id., 3 Cir., 101 F.2d 774, 790. In *Lugar v. Edmondson Oil Co.*, supra, the Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under 1983." Id., at 935. Accord, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *United States v. Price*, 383 U.S., at 794 , n. 7. In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "fairly attributable to the State." *Lugar*, 457 U.S., at 937.

132. To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Ibid. "[S]tate employment is generally sufficient to render the defendant a state actor." Id., at 936, n. 18; see id., at 937. It is firmly [487 U.S. 42, 50]  established that a defendant in a 1983 suit acts under color of state law when he abuses the position given to him by the State. See

42

*Monroe v. Pape*, 365 U.S., at 172. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. See, e. g., *Parratt v. Taylor*, 451 U.S., at 535 -536; *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). See also *Flagg Bros., Inc. v. Brooks*, 436 U.S., at 157, n. 5.

133. Plaintiff's rights were deprived, constitutional rights and federal statutory rights. As to 42 U.S.C. §§ 1981 et seq., the law was designed and clearly intended to benefit Plaintiff and similarly situated persons, resulting in the creation of federal rights that can be protected by section 1983. *Maine v. Thiboutot,* 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

134. The two essential elements have been established.

135. Plaintiff has statutory standing to defeat and end this fraudulent scheme.

136. The alleged violations were a proximate or legal cause of the damages that the plaintiff suffered. *Arnold v. IBM Corp.*, 637 F.2d 1350 (9th Cir. 1981)

137. Courts also have broad power to grant equitable relief to plaintiffs in section 1983 actions. *United States v. City of Yonkers,* 96 F. 3d 600 (2nd Cir. 1996); *Wyatt v. Stickney,* 344 F. Supp. 373 (M.D. Ala. 1972); *Hutto v. Finney,* 437 U.S. 678, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978). When the court does provide equitable relief, it usually also provides ongoing evaluation and supervision of the enforcement of its orders.

138. Under section 1983, the statute of limitations does not begin to run until the cause of action accrues. The cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action". *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975)

## 10. The Complaint Satisfies the Standards Set by the Supreme Court of the United States for Complaints in the Federal Court System. *Twiqbal*

139. The Supreme Court of the United States in two cases *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), commonly referred to as *Twiqbal,*

43

has established that plaintiffs suing in federal court must demonstrate that their claims are plausible, rather than simply describing the case in sufficient detail to put the defendants on notice.

140. This complaint: contains well-pleaded factual allegations, the first of the two working principles underlying *Twiqbal*; and the complaint states a plausible claim for relief, the second of the two working principles underlying *Twiqbal*.

141. Pursuant to *Twiqbal* when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. It is Kraft's legal position that his complaint satisfies *Twiqbal*.

142. Plaintiff has standing pursuant to Article III of the U.S. Constitution; he has statutory standing pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1343 (a); the complaint satisfies the standards governing complaints in the federal court system as clarified by the Supreme Court of the United States; and he is entitled to relief.

Respectfully submitted on this 24th day of July 2020.

_____

Plaintiff

Rune Kraft
Kraft Legal | United States
251 Little Falls Drive
Wilmington, DE 19808
302 494 1801
rk@kraft.legal